

**Seyfarth Shaw LLP**
620 Eighth Avenue
New York, New York  10018
**T** (212) 218-5500
**F** (212) 218-5526

agenovese@seyfarth.com
**T** (212) 218-5621

www.seyfarth.com

February 16, 2024

**VIA ECF**

Honorable Christine P. O'Hearn
United States District Judge
Mitchell H. Cohen Building & U.S. Courthouse, Room 1050
4th & Cooper Streets Camden, NJ 08102

Re: *Healthcare Justice Coalition NJ, LLC v. UnitedHealth Group, Inc., et al.*
Civil Action No.: 1:24-cv-00493-CPO-SAK
<u>Pre-Motion Letter – Motion to Dismiss Amended Complaint and to Strike</u>

Dear Judge O'Hearn,

This firm represents Defendants UnitedHealth Group, Inc. ("UHG"), UnitedHealthcare Insurance Company, and UMR, Inc. (collectively, "Defendants").  Defendants submit this pre-motion conference letter in support of their motion to dismiss the First Amended Complaint ("FAC") of Plaintiff Healthcare Justice Coalition NJ, LLC ("Plaintiff") under Fed. R. Civ. P. 12(1) and 12(b)(6), and to strike certain allegations under Fed. R. Civ. P. 12(f).

Plaintiff asserts three causes of action against Defendants for (i) quantum meruit; (ii) implied contract; and (iii) violations of New Jersey Health Claims Authorization, Processing, and Payment Act ("HCAPAA").  As set forth herein, there are multiple grounds for dismissal.  However, Defendants only highlight the primary grounds to meet page limits.[1]

**I.  Allegations Divorced From Plaintiff's Claims And Damages Should Be Stricken.**

Although Plaintiff alleges that it is "an organization whose mission is to pursue payment owed to emergency physicians," (FAC ¶ 6), as noted in Defendants' Notice of Removal, (Dkt. 1), it is a New Jersey limited liability company operating as a debt collector attempting to recover accounts receivable purchased from staffing companies managing out-of-network providers. (Dkt. 1 at 5.)  In fact, Plaintiff was formed only a month before this lawsuit was filed.

Fed. R. Civ. P. 12(f) provides that a "court may strike from a pleading ... any redundant, immaterial, impertinent or scandalous matter."  Courts routinely grant motions to strike allegations that are "not essential to any claim presented," are "not pertinent to the ... case," and "did not result in an adjudication on the merits or legal or permissible findings of fact."  *See Clugston v. Nationwide Mut. Ins. Co.*, 2006 WL 1290450, at *1, *4 (M.D. Pa. May 10, 2006).  Here, the FAC contains irrelevant allegations that bear no relationship to the issues and damages in this case.[2]  For example, Plaintiff suggests that this lawsuit is aimed to "improve the Physicians' capability to provide quality emergency care," (*id.* ¶ 4), and that it is working to somehow remedy "[s]ystemic underpayments" that "threaten the stability of America's health care system by forcing emergency physician groups into bankruptcy and shuttering emergency

---

[1] Defendants have not received the disputed claims list, which Plaintiff alleges contains "over 7,800 benefit claims."  (FAC ¶ 28.)  Defendants reserve all rights to assert additional grounds for dismissal, once it has the opportunity to review the claims list and determine what types of claims and health plans are at-issue, including the administrator/sponsor of those health plans and the plan designs.  Defendants also reserve the right to seek dismissal of UHG, as an improper party.

[2] *See, e.g.*, FAC ¶¶ 2–4, 6, 15, 17, 21–22 and 24.

departments," (*id.* ¶ 17).  Plaintiff even references situations in "*rural and medically underserved areas such as those serviced by the Physicians*, where the closure of an emergency department can force people to travel much greater distances for basic care," and "[f]or people suffering from strokes, heart attacks, and other life-threatening conditions, even minutes can be the difference between life and death."  (*Id*. (emphasis added).)  However, the hospitals referenced in the FAC—where the emergency services were allegedly rendered—are *in-network* facilities in Newark and Elizabeth, (Dkt. 1-5 at ¶ 17).  It is clear that many of Plaintiff's allegations attempt to mislead the Court and the public regarding the nature of this dispute and were asserted to paint Defendants in a bad light, regardless of context.  The "immaterial, impertinent [and] scandalous" allegations should be stricken.  *See Bloom v. Congregation Beth Shalom*, 2014 WL 356624, at *4 (W.D. Pa. Jan. 31, 2014) (quoting Fed. R. Civ. P. 12(f)).[3]

## II.    Lack Of Standing And An Improper Group Pleading Necessitates Dismissal.

Plaintiff's FAC is devoid of factual allegations demonstrating that Plaintiff has Article III standing to recover under the purportedly assigned physician "accounts" and rights.  (FAC ¶ 16.)  Courts have held that "vague references to a ... purported assignment"—without information as to the timing, parties, or express terms—are insufficient to "establish that [plaintiff] has standing to sue."  *Demaria v. Horizon Healthcare Servs., Inc*., 2012 WL 5472116, at *2, *4 (D.N.J. Nov. 9, 2012); *UD Tech. Corp. v. Phenomenex, Inc*., 2007 WL 28295, at *6-7 (D. Del. Jan. 4, 2007) (dismissing a complaint under Rule 12(b)(1) where the assignment allegations "provide[d] no temporal context" and plaintiff did not "even attach as an exhibit to its complaint . . ., the [assignment] that purportedly conferred to [plaintiff] the rights to bring this lawsuit.").  Of import, an assignment of legal claims must be "express" and reference "legal causes of action or claims" in a manner that is "unambiguous and all-inclusive."  *Lerman v. Joyce Int'l, Inc*., 10 F.3d 106, 112 (3d Cir. 1993).  Plaintiff's FAC falls short and fails to describe, let alone include, the alleged assignments.

Additionally, Plaintiff asserts that its causes of actions and damages arise from thousands of unidentified claim denials or other unidentified misconduct based upon representative allegations.  A plaintiff may not utilize group pleadings to drown out individual pleading burdens.  *See Cape Reg'l Med. Ctr. v. Cigna Health & Life Ins. Co*., 2018 WL 2980386, at *2– 3 (D.N.J. June 14, 2018); *Complete Foot & Ankle v. Cigna Health & Life Ins. Co*., 2018 WL 2234653, at *2 (D.N.J. May 16, 2018).  This is particularly true in the healthcare context, where benefits determinations can be driven by different reasons, such as lack of medical necessity, plan exclusions, or plan-specific payment methodologies.  *See Boston Post Road Medical Imaging, P.C. v. Allstate Ins. Co.*, 2004 WL 1586429, at *2 (S.D.N.Y. July 15, 2004) (noting "even if the insurance policies are identical, different provisions of the policies will be relevant to different claims in this action[,]" litigating them together would be "unwieldy").

## III.    Plaintiff's HCAPPA Claim Fails As A Matter Of Law.

There is no private right of action under HCAPPA.  *See MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 358 (D.N.J. 2021); *BrainBuilders, LLC v. Aetna Life Ins. Co*., 2024 WL 358152, at *13 (D.N.J. Jan. 31, 2024).  This claim fails as a matter of law.

---

[3] Defendants reserve all rights to seek relief related to Plaintiff's allegations and causes of action that lack a factual foundation.  *See* Fed. R. Civ. P. 11.

### IV. Plaintiff's Quantum Meruit Claim Is Subject To Dismissal.

Despite it being a necessary element for a cognizable quantum meruit claim, the FAC lacks factual allegations demonstrating that *Defendants received a benefit*. *See Haghighi v. Horizon Blue Cross Blue Shield of New Jersey*, 2020 WL 5105234, at *5 (D.N.J. Aug. 31, 2020). The only benefit identified in the FAC is the provision of services by unidentified out-of-network providers to unidentified "Members." (FAC ¶ 38.) However, "numerous courts within this District have found, the insured individual, rather than the insurer, derives the benefit from a healthcare providers' provision of medical services." *Id.* at *5; *Adv. Orthopedics & Sports Med. Inst. v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 WL 6603650, at *4 (D.N.J. Dec. 14, 2018) (dismissing quantum meruit claim because the benefit was conferred to the patient, not the insurer).

Notwithstanding the foregoing, Plaintiff may advocate a legal theory already rejected by the Third Circuit in *Allegheny General Hospital v. Philip Morris*, in which hospitals sued tobacco companies for quantum meruit to recover for medical services the hospitals provided to nonpaying patients who were harmed through smoking. 228 F.3d 429, 447 (3d Cir. 2000). There, the plaintiffs argued that "by paying for the medical services required by nonpaying patients, the Hospitals discharged the Tobacco Companies' legal duties and saved them from bearing costs." *Id.* The Third Circuit rejected this theory, holding that "since the Hospitals had an independent obligation to provide health care to nonpaying patients, incidental benefit to the Tobacco Companies is not enough to maintain an action; the nonpaying patients got the main benefit, not the Tobacco Companies." *Id.* The same is true here, regardless of whether Plaintiff points to "the federal law known as EMTALA"[4] or suggests that unidentified providers' provision of services to unidentified "Members" somehow "discharge[s] legal and contractual obligation[s]" held by Defendants. (FAC ¶¶ 36, 38–40.)

### V. Plaintiff Has Not—And Cannot—Assert A Cognizable Implied Contract Claim.

"The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement." *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987). Here, Plaintiff does not allege a plausible implied contract between it and Defendants, including because Plaintiff seeks benefits for *out-of-network* claims. *See Coast Spine Joint v. Anthem Blue Cross Blue Shield*, 2023 WL 3559704, at *6 (D.N.J. Apr. 27, 2023) (dismissing implied contract claim). And Plaintiff's attempts to create an implied contract resting on Defendants' purported legal obligations under *federal* and state statutes are equally insufficient: there are no factual allegations in the FAC demonstrating that the parties behaved in a way that created an implicit agreement to reimburse disputed out-of-network claims. *See AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 2023 WL 8232887, at *6 (W.D. Tenn. July 11, 2023).

Based on the foregoing, and for other reasons not stated herein, Defendants respectfully request a briefing schedule so it may move to dismiss Plaintiff's FAC and to strike.

We thank Your Honor for your attention to this important matter.

---

[4] The federal Emergency Medical Treatment and Active Labor Act ("EMTALA") is featured in Plaintiff's FAC and Plaintiff conceded in its pre-motion letter that it serves as a basis for the causes of action against Defendants.



Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Amanda L. Genovese*
Amanda L. Genovese